**UNITED STATES DISTRICT COURT**  **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:18-CR-87(8) |
| | § | |
| MELVIN H. WEDGEWORTH, III | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Melvin Wedgeworth's ("Wedgeworth") Motion for Sentence Reduction under the First Step Act and pursuant to 18 U.S.C. § 3582(c)(1)(A) (#464). The Government filed a Response in opposition (#466). Wedgeworth filed a Reply in rebuttal to the Government's Response (#468). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recognized that although Wedgeworth's motion was filed as a compassionate release motion, he does not assert any health-related issues. Instead, the premise of his motion is that the Federal Bureau of Prisons ("BOP") is not giving him credit on his federal sentence for the time he was in state custody for parole violations arising from his commission of his federal offense. Having considered Wedgeworth's motion, the Government's response, Wedgeworth's reply, Probation's report, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On September 24, 2018, Texas state parole violation warrants were issued for Wedgeworth's arrest for the violation of his parole in four state cases—two in the 252nd District Court of Jefferson County, Texas, in which he was convicted of possession of a controlled substance on June 13, 2012 (Docket No. 13-16266), and possession of a controlled substance methamphetamine on April 18, 2013 (Docket No. 13-16665), and two in the 260th District Court

of Orange County, Texas, in which he was convicted of felony possession of a controlled substance on May 18, 2013 (Docket No. D130615-R), and felony evading arrest or detention on May 18, 2013 (Docket No. D130618-R). The warrants were executed on February 5, 2019, and Wedgeworth was detained on a parole hold in the Orange County Jail.

On June 5, 2019, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a Third Superseding Indictment, charging Wedgeworth in Count One with Conspiracy to Distribute and to Possess with Intent to Distribute a Mixture or Substance Containing at Least 50 Grams of Methamphetamine "Actual," in violation of 21 U.S.C. § 846. The Indictment alleges that Wedgeworth and six co-conspirators engaged in a methamphetamine-trafficking conspiracy from October 2016 to August 2018. Wedgeworth was arrested pursuant to a writ of habeas corpus ad prosequendum to answer the charges in the Indictment and was transferred to temporary federal custody on June 14, 2019. On August 29, 2019, Wedgeworth pleaded guilty to the offense charged in Count One of the Third Superseding Indictment pursuant to a binding plea agreement. Subsequently, on March 26, 2020, the court sentenced Wedgeworth to a term of 151 months' imprisonment, to be followed by five years of supervised release, pursuant to the terms of the plea agreement. At the time of sentencing, he was pending parole revocation proceedings in his state cases.

Wedgeworth was returned to state custody on April 1, 2020, after his federal sentence was imposed. According to Probation, Wedgeworth was sentenced to an additional 7 years in state custody on April 22, 2020, for the possession of a prohibited substance in a correctional facility in 2018. The state judgment makes no reference to the federal sentence or if his state sentence is to run consecutively or concurrently to any other sentence. Wedgeworth's parole was revoked on

2

May 28, 2020, and he was sentenced to a period of incarceration in the Texas Department of Criminal Justice ("TDCJ"). Parole records do not indicate if the parole revocation sentences are to run consecutively or concurrently with any other state or federal sentence. Wedgeworth was paroled from the TDCJ on November 8, 2021, and was returned to federal prison. He was given credit by the State of Texas for the time he was incarcerated from February 5, 2018, to November 8, 2021, in both state and federal facilities, which totals 33 months. Wedgeworth is currently housed at Federal Correctional Institution Yazoo City Medium ("FCI Yazoo City"), located in Yazoo City, Mississippi, with a projected release date of July 28, 2032.

II.    Analysis

    A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Often referred to as "compassionate release," § 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

3

of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024); *United States v. Jackson*,

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence.  *Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles.  The defendant must have exhausted his administrative remedies; "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii); the reduction must be consistent with the Commission's applicable policy statements; and the defendant must convince the court to exercise

5

its discretion to grant the motion after considering the § 3553(a) factors.  *See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022).

      B.      <u>Exhaustion of Administrative Remedies</u>

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Attached to Wedgeworth's motion is a request for compassionate release he submitted to Warden Boulet on July 22, 2022, in which he stated:

> In light of the First Step Act of 2018 and in conjunction with 18 USC 3582(c)(1)A), I am requesting for a compassionate release to a half-way house or an immediate release to house arrest.  I am a key candidate for early release due to my post-conviction rehabilitation and the fact that I have been an examplar [sic]

6

> to both Staff and other inmates.  I have also been able to participate in the various programs offered by the Bureau of Prisons, although I lately due to COVID-19 and the lock-down/quarantine status that has impeded any programs, has kept me in the UNIT or in my cell. . . . Should you deny me any compassionate relief, this will serve as my exhaustion of my administrative remedy and will allow me to pursue this matter with my US Federal District Court Sentencing Judge.

There is no indication that the warden responded to Wedgeworth's request.  It is apparent, however, that Wedgeworth's request to the warden asks for compassionate release, not merely a reduction in his sentence.  Moreover, he makes no mention in the request of the complaint he raised in this court about the BOP's failure to give him credit on his federal sentence for the time he was in state custody imprisoned for parole violations.  Hence, in this instance, except as to his rehabilitation claim, it appears that Wedgeworth is foreclosed from obtaining relief, because he has not submitted a motion in this court based on the circumstances raised in his letter request to the warden of the facility where he is housed.  *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). "The exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2.

Also attached to Wedgeworth's motion is an Inmate Request to Staff form dated June 21, 2022, styled "Informal Resolution Prior Credit for Time Served While in Fed Custody," in which

Wedgeworth details the various state facilities in which he was housed after he was sentenced in his federal case before being taken to a federal holding facility on November 8, 2021, claiming that he has total jail credit due of 1,008 days. He states, "All state time was ran [sic] concurrent with federal time." In addition, Wedgeworth attached a Request for Administrative Remedy Form dated September 21, 2022, which is entitled "Prior Credit for Time Served." In this document, Wedgeworth states that his prior "Informal Resolution that was submitted to R & D and CMC Director Ms. Walker were [sic] never returned or resolved." He is seeking "all jail time credit from 2/5/2019 thru to 11/8/2021." Wedgeworth further states, "I am warranted a Nunc Pro Tunc designation and 1008 days warranted—please adjust my release date to reflect credit for time served." There is no indication that BOP officials ever responded to this request.

Even if Wedgeworth arguably complied with the exhaustion requirement by filing these subsequent requests before filing his motion for compassionate release, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

C.    Sentence Credit for Time Spent in State Custody

1.    Consecutive or Concurrent Sentences

Wedgeworth appears to be under the misapprehension that his federal sentence was ordered to run concurrently with any future sentences imposed in state court for parole violations in four state cases, two in Jefferson County and two in Orange County. The Judgment pronounced in federal court, however, is silent as to whether Wedgeworth's 151-month term of imprisonment is to run consecutively or concurrently with any other sentence. Contrary to Wedgeworth's contention, the Judgment, which was imposed on March 26, 2020, does not state that his federal sentence is to run concurrently with any sentences imposed in state court upon the revocation of

8

his parole, which occurred on May 28, 2020.  This court never stated that Wedgeworth's federal sentence was to run concurrently with any other sentence, federal or state.

The state convictions at issue in which Wedgeworth's parole was revoked include:  a Jefferson County conviction for possession of a controlled substance imposed on June 25, 2013, in which he was arrested on June 13, 2012, in possession of approximately 2.5 grams of methamphetamine (Docket No. 13-16266); a Jefferson County conviction for possession of a controlled substance - methamphetamine imposed on June 25, 2013, in which he was arrested on April 18, 2013, in possession of 4 to 200 grams of methamphetamine (Docket No. 13-16665); an Orange County conviction for felony possession of a controlled substance imposed on June 11, 2015, in which he was arrested on May 18, 2013, in possession of 2 grams of methamphetamine (Docket No. D130615-R); and an Orange County conviction for felony evading arrest or detention imposed on June 11, 2015, in which he was arrested on May 18, 2013, after attempting to flee from law enforcement on a motorcycle (Docket No. D130618-R).  In the case at bar, Wedgeworth was arrested on June 14, 2019, for his participation in a conspiracy that involved his possession and distribution of 228.25 grams of methamphetamine (actual) between July 26, 2018, and February 5, 2019, in Orange County, Texas.  The state offenses set forth above that occurred in 2012 and 2013 and for which Wedgeworth was convicted and sentenced prior to his commission of the federal offense and on which he was serving terms of parole at the time of his offense of conviction are not relevant conduct to the case at bar but instead are considered solely as prior criminal history.  UNITED STATES SENTENCING GUIDELINES MANUAL §1B1.3 application note 5(C) (2024).  Upon the revocation of his parole, Wedgeworth resumed serving his original state sentences that were paused temporarily when he was released on parole.  Hence, the sentencing

guideline that provides that a federal sentence should run concurrently with a state sentence that "is anticipated to result from another offense that is relevant conduct to the instant offense of conviction" does not apply. *See* U.S.S.G. § 5G1.3(c).

Federal courts generally "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." *Setser v. United States*, 566 U.S. 231, 246 (2012); *see* 18 U.S.C. 3584(a). Nonetheless, under federal law, "multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). Thus, if a judgment does not specify that a federal sentence should run concurrently with a separately imposed sentence, the sentences are presumed to run consecutively. *United States v. Ochoa*, 977 F.3d 354, 357 (5th Cir. 2020); *United States v. Milton*, 805 F. App'x 280, 282 (5th Cir. 2020); *United States v. Johnson*, 760 F. App'x 261, 265 (5th Cir. 2019); *United States v. Eiland*, 711 F. App'x 730, 731 (5th Cir. 2017); *Hunter v. Tamez*, 622 F.3d 427, 430 (5th Cir. 2010); *Potoski v. Fox*, 583 F. App'x 396, 397 (5th Cir. 2014). The Fifth Circuit has interpreted the statute to create a preference for imposing such sentences consecutively. *United States v. Hernandez-Serrano*, 858 F. App'x 695, 695 (5th Cir. 2021) (citing *United States v. Candia*, 454 F.3d 468, 477 (5th Cir. 2006)). Because the sentences at issue here were imposed at different times by different courts for unrelated offenses, and the court's judgment does not specify otherwise, Wedgeworth's federal sentence is deemed to run consecutively to his prior state sentences. *See Johnson*, 760 F. App'x at 265. Moreover, the United States Sentencing Commission recommends that any sentence resulting from a revocation of federal or state probation, parole, or supervised release run consecutively to any

10

sentence imposed as a result of a federal conviction.  *See* U.S.S.G. §§ 5G1.3 application note 4(C),7 B1.3(f) & application note 4 (2024).  Specifically, § 7B1.3(f) states:  "Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."  U.S.S.G. § 7B1.3(f).  This is because "a revocation sentence punishes a breach of trust rather than the criminal conduct."  *United States v. Daughenbaugh*, 793 F. App'x 237, 240 (5th Cir. 2019).

Wedgeworth provides no evidence that the state judges who revoked his parole ordered that the sentences were to run concurrently to his federal sentence.  Probation reported that his parole records do not indicate that the parole revocation sentences were to be served concurrently with his federal sentence.  Even if they did, that is of no import.  Rather, the presumption and this court's present determination that Wedgeworth's federal sentence should run consecutively to his state sentences "is a federal matter which cannot be overridden by a state court provision for concurrent sentencing on a subsequently-obtained state conviction."  *Hunter*,  622 F.3d at 430; *accord Lewis v. Warden FCC Beaumont*, 819 F. App'x 211, 213 (5th Cir. 2020) (recognizing that a state court's order for concurrent sentencing is not binding on the BOP); *Leal v. Tombone*, 341 F.3d 427, 429 (5th Cir. 2003) (citing *Bloomgren v. Belaski*, 948 F.2d 688, 690-91 (10th Cir. 1991)); *see Setser*, 566 U.S. at 244 (holding that a district court has the discretion to order that a federal sentence run consecutively to an anticipated state sentence).  The presumption that sentences run consecutively unless the federal sentencing court orders otherwise applies even when the court was silent regarding an anticipated state sentence and the state court ordered the state

11

sentence to run concurrently with the federal sentence. *See, e.g.*, *Hunter*, 622 F.3d at 430-31 (recognizing presumption that sentences run consecutively when the federal sentencing court was silent regarding a subsequent state sentence even though the state court specified concurrent sentencing). Thus, Wedgeworth's contention that the sentences he received upon the revocation of his parole in state court were to run concurrently with his federal sentence is unfounded.

2.     Effect of Writ of Habeas Corpus Ad Prosequendum

Wedgeworth also seems to believe that he was in primary federal custody after he was arrested pursuant to a writ of habeas corpus ad prosequendum to answer the charges in the Third Superseding Indictment and was transferred from the Orange County Jail to the LaSalle federal holding facility on June 14, 2019. The Fifth Circuit has held repeatedly, however, that inmates are not entitled to credit on federal sentences for time spent in federal custody on a writ of habeas corpus ad prosequendum because such a writ simply borrows the prisoner and does not transfer primary custody from the state to federal authorities. *See United States v. Aparicio*, 963 F.3d 470, 476 (5th Cir. 2020); *Trejo v. Warden*, 238 F. App'x 12, 13 (5th Cir. 2007) (citing *United States v. Brown*, 753 F.2d 455, 456 (5th Cir. 1985)); *Carr v. U.S. Bureau of Prisons*, 96 F. App'x 255, 255 (5th Cir. 2004) (finding inmate ineligible for double credit where he was "borrowed" from state custody pursuant to a writ of habeas corpus ad prosequendum); *Johnson v. Warden*, FCI-Texarkana, No. 5:22cv116-JRG-JBB, 2024 WL 4530315, at *2 (E.D. Tex. Sept. 11, 2024), *adopted by* 2024 WL 4529339 (E.D. Tex. Oct. 18, 2024). Hence, Wedgeworth was in the primary custody of the State of Texas until the date the state sentences on which he was released on parole expired or he was once again released on parole. *Johnson*, 2024 WL 4530315, at *2. Wedgeworth was not in primary federal custody until November 8, 2021, when he was once again

released on parole by state authorities and was taken to the Joe Corley Detention Facility in Conroe, Texas, to be transported to serve his federal sentence. It is from that date that his federal sentence computation commenced. As federal law states, "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); *see Aparicio*, 963 F.3d at 477.

Probation confirmed that Wedgeworth was given credit by the State or Texas for the time he served from February 5, 2019, to November 8, 2021. Because the time Wedgeworth spent in custody was applied to his state sentences, he is not entitled to any time credit on his federal sentence which was already applied to his state sentences. *Johnson*, 2024 WL 4530315, at *2. Federal law set forth in 18 U.S.C. § 3585(b) provides that a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed, or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed, that has not been credited against another sentence. 18 U.S.C. § 3585(b); *see United States v. Young*, No. 20-30492, 2021 WL 4515393, at *6 (5th Cir. Oct. 1, 2021); *United States v. Jack*, 566 F. App'x 331, 332 (5th Cir. 2014); *Perez v. Lappin*, 361 F. App'x 561, 562 (5th Cir. 2010); *Johnson*, 2024 WL 4530315, at *2. If the defendant "receives credit for the time he served against the state charges, none is to be granted against the federal sentence." *Mercedes v. Martin*, No. 1:08-CV-524, 2010 WL 3703227, at *1 (E.D. Tex. Mar. 9, 2010) (citing *United States v. Garcia-Gutierrez*, 835 F.2d 585, 586-87 (5th Cir. 1988)); *accord United States v. Rubin*, 854 F. App'x 625, 626 (5th Cir. 2021). Moreover,

only the Attorney General through the BOP, and not the sentencing court, is authorized to calculate credit for time spent in official detention under § 3585. *United States v. Wilson*, 503 U.S. 329, 335 (1992)  Here, all the time credit Wedgeworth now seeks was credited against his state sentences.  Thus, it cannot be credited against the 151-month federal sentence that was imposed in the case at bar.  The Fifth Circuit has made clear that prisoners cannot receive double credit on both state and federal sentences for time spent in pre-sentence custody. *See Edison v. Berkebile*, 349 F. App'x 953, 956 (5th Cir. 2009); *Leal*, 341 F.3d at 428; *Johnson*, 2024 WL 4530315, at *2.

### 3.    Availability of Nunc Pro Tunc Order

Wedgeworth further seems to request that the court issue a retroactive *nunc pro tunc* order designating the state prison as the place in which he was to serve a portion of his federal sentence. "Where a federal sentence is imposed before a state sentence, the BOP may indirectly award credit for time served in state prison by designating *nunc pro tunc* the state prison as the place in which the prisoner serves a portion of his federal sentence." *Pierce v. Holder*, 614 F. 3d 158, 160 (5th Cir. 2010; *see Jack*, 566 F. App'x at 332; *Hunter*, 622 F.3d at 429 & n.2; *Rodriguez*, 76 F. App'x at 520.  The BOP will make this designation only when it is consistent with the intent of the sentencing court or with goals of the criminal justice system, as set out in BOP Program Statement 5160.05. *Johnson*, 2024 WL 4530315, at *2.  The district court, however, has no authority to make a *nunc pro tunc* designation. *Jack*, 566 F. App'x at 332 (citing *Wilson*, 503 U.S. at 335).  The authority for administering a sentence previously imposed rests with the Attorney General through the BOP. *Wilson*, 503 U.S. at 334-35; *United States v. Sonnier*, No. 2:13-CR-00059-01, 2024 WL 4554781, at *1 (W.D. La. Oct. 22, 2024).  Thus, the BOP, rather

14

than the district court, has the authority to award credit for time accrued in state custody against a federal sentence, via a *nunc pro tunc* designation or otherwise.  *See Wilson*, 503 U.S. at 333; *Jack*, 566 F. App'x at 332; *United States v. Handy*, No. 6:20CR-00283-01, 2024 WL 4554785, at * 1 (W.D. La. Oct. 23, 2024); *Sonnier*, 2024 WL 4554781, at *1; *Johnson*, 2024 WL 4530315, at *2.

To secure a sentence credit by means of a *nunc pro tunc* designation, an inmate must initiate and complete the BOP's administrative process.  *Handy*, 2024 WL 4554785, at * 1; *Sonnier*, 2024 WL 4554781, at *1.  As part of this process, the BOP solicits input from the district court and prosecutor before forming its opinion.  *See United States v. Thadison*, No. 5:18-cr-21-DCB-LGA-002, 2024 WL 3707557 (S.D. Miss. Aug. 7, 2024).  A district court may then review a challenge to the BOP's refusal to grant credit for time served through a § 2241 petition after the BOP has made a final decision on the inmate's request.  *See Pierce*, 614 F.3d at 160.  A petition under 28 U.S.C. § 2241 must be filed in the district where the petitioner is incarcerated.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 442-43 (2004); *Lee v. Wetzel*, 244 F.3d 370, 375 n.5 (5th Cir. 2001).  Here, it is unclear whether Wedgeworth has exhausted the BOP administrative process. Attached to his motion is a BOP Request for Administrative Remedy entitled "Prior Credit for Time Served" in which Wedgeworth states:  "I am warranted a nunc pro tunc designation and 1008 days warranted—please adjust."  There is no indication, however, that he received a response to this request or otherwise participated in the BOP administrative process.  If Wedgeworth has completed the administrative process and is dissatisfied with the result, he may file a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in the Southern District of Mississippi, where Yazoo City, Mississippi, his place of incarceration, is located.  This court,

located in the Eastern District of Texas, has no jurisdiction to review such a petition.  *See Sonnier*, 2024 WL 4554781, at *1.

In summary, Wedgeworth's misconceptions that his federal sentence was to run concurrently with the state sentences imposed upon the revocation of his parole, that he is entitled to time credit on his federal sentence from the date he was placed in temporary federal custody pursuant to his arrest on a writ of habeas corpus ad prosequendum, and that this court is authorized to issue a retroactive *nunc pro tunc* designation of a state facility for the service of his federal sentence are unfounded and provide no basis for relief.

D.    Rehabilitation

Wedgeworth maintains that his post-sentence rehabilitation, evidenced by the courses he has taken, the programs he has completed, and the fact that he is less likely to re-offend due to his age (38), establishes extraordinary and compelling reasons for compassionate release.  He contends that he "has taken every opportunity and/or advantage in immediately getting a job as a unit orderly and taken classes towards the FSA of 2018 Pattern Program Earned Credits."  Regarding rehabilitation of the defendant, the amended policy statement recognizes:  "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").  Nonetheless, the amendments add a proviso that states:

16

"However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

Hence, "while the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone." *Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020).  In fact, "making good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).  The FSA Recidivism  Risk Assessment document that Wedgeworth attached to his motion reveals that he is considered a high risk inmate by the BOP and is assigned a "high risk recidivism level."  While it appears that Wedgeworth has maintained a good disciplinary record while incarcerated in federal prison, other courts have found a similar argument not to be an extraordinary and compelling reason for compassionate release. *See United States v. Campos*, No. 22-5216, 2022 WL 4298703, at *2 (6th Cir. Aug. 25, 2022) (affirming the denial of compassionate release where the district court found the defendant's disciplinary record with no infractions and rehabilitation "insufficient" in light of his "serious offense," "significant criminal history," and the fact that he "had a substantial amount of his sentence remaining"); *United States v. Parker*, No. 18-CR-138 (JLS), 2023 WL 2806069, at *6 (W.D.N.Y. Apr. 5, 2023) ("[E]ven if [the defendant] lacks a disciplinary record, 'good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c).'" (quoting *United States v. Corin*, No. S7 10 CR 391-64 (CM), 2020 WL 5898703,

at *4 (S.D.N.Y. Oct. 5, 2020))); *United States v. Tillman*, No. 13 Cr. 362 (JPC), 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) (declining to grant compassionate release despite the defendant's "clean disciplinary record").

In any event, Wedgeworth has failed to demonstrate any other circumstances warranting a reduction in his term of imprisonment. Thus, even if the court were to conclude that Wedgeworth has been rehabilitated, this fact, without more, does not merit compassionate release or a reduction in sentence. U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. § 994(t)). While the court hopes that Wedgeworth will continue on the path to rehabilitation, the court is of the opinion that neither Wedgeworth's failure to obtain sentence credit on his federal sentence for the time he spent in state custody after the revocation of his parole nor his rehabilitation efforts warrant a reduction in his sentence or his release at this time.

### E.    COVID-19 Effects and Restrictions

Wedgeworth makes only a passing reference to the effects of the COVID-19 pandemic. He suggests that "the COVID-19 global pandemic and an on-going lock-down due to a severe shortage of staff" has make it more difficult for him to take advantage of the earned credits program. In his reply brief, when discussing the length of his sentence, Wedgeworth states, "COVID-19 also increases his sentence with additional health risks and potential death risks that Wedgeworth was not sentenced to."

The medical documentation Wedgeworth attached to his motion does not show that he contracted COVID-19 while incarcerated in federal prison and reflects that he was administered a COVID-19 test on March 29, 2022, that produced negative results. The record further notes that he is classified as a Care Level 1 inmate which indicates that he is healthy or requires only simple

chronic care.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."  Importantly, "generalized concerns about COVID-19 cannot be deemed an 'extraordinary and compelling reason' for compassionate release under [§] 1B1.13."  *United States v. Stehley*, No. 3:16-CR-14, 2023 WL 8014078, at *7 (W.D. Pa. Nov. 9, 2023); *see United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021))).  Rather, § 1B1.13(b)(1)(D) is concerned with "an 'ongoing outbreak of infectious disease' at a 'correctional facility'" that, due to a defendant's "personal health risk factors and custodial status," "place[s] the defendant at 'increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak.'"  *Id*. (quoting U.S.S.G. § 1B1.13(b)(1)(D)(i), (ii)).  Moreover, the federal COVID-19 public health emergency officially ended on May 11, 2023.

"With respect to motions for compassionate release based on COVID-19, 'the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances.  Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.'"  *United States v. Iruegas*, No. CR 2:18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021) (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020)); *accord United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021) ("[T]he conditions that affect all inmates at [Defendant's facility], regardless of their health, age, and family circumstances, do not

warrant the extraordinary remedy of compassionate release for Defendant individually."); *United States v. Dodge*, No. CR 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances.  Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."); *see also United States v. Cruz-Cruz*, No. CR13-49RSL, 2021 WL 1968389, at *4 (W.D. Wash. May 17, 2021) ("Defendant's allegations regarding general conditions of confinement, coupled with vague allegations of COVID-19 exposure and damage to mental health, are insufficient to establish extraordinary and compelling reasons exist."); *United States v. Wright*, No. 17-CR-0301, 2020 WL 7334412, at *5 (D. Minn. Dec. 14, 2020) ("It is undisputed that the BOP has implemented numerous measures to prevent and mitigate COVID-19 outbreaks within its facilities.").  In any event, the safety measures that were implemented benefitted Wedgeworth, other inmates, and BOP staff members during the pandemic.  The consequential inconveniences presented by the BOP's modified operations on Wedgeworth's daily activities, including his participation in the earned credits program, do not create an extraordinary and compelling reason to reduce his sentence.

> F.    Section 3553(a) Factors

The court further finds that neither a reduction in Wedgeworth's sentence nor compassionate release is merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021)

(finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *United States v. Thompson*, 984 F.3d 431, 435 n.11 (5th Cir. 2021) (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Wedgeworth's offense of conviction stems from his participation in a conspiracy to distribute and to possess with intent to distribute at least 50 grams of methamphetamine (actual).

Law enforcement agencies began investigating Codefendants Marco Rodriguez and Darian Simmons in 2016 in connection with a drug trafficking organization ("DTO") that distributed methamphetamine to customers in the Houston, Texas, area as well as throughout Southeast Texas and Southwest Louisiana.  Codefendant Shelley Wilkinson, a resident of Vidor, Texas, purchased methamphetamine from Rodriguez and Simmons and sold it to her customers in Southeast Texas. Wedgeworth was one of Wilkinson's customers who purchased methamphetamine for the purpose of further distribution.   Upon learning of Wedgeworth's association with the DTO, law enforcement utilized an undercover officer to purchase methamphetamine (actual) from Wedgeworth on at least six occasions in Vidor.  Wedgeworth had purchased the methamphetamine from Wilkinson, who, in turn, had purchased it from Rodriguez and Simmons.  These sales include Wedgeworth's selling the following quantities of methamphetamine (actual) to the undercover officer on the dates indicated:  10.37 grams - July 26, 2018; 20.20 grams - July 30, 2018; 20.20 grams - August 1, 2018; 31.81 grams - August 6, 2018; 27.50 grams - August 8, 2018; and 108.47 grams - August 13, 2018.  On August 15, 2018, agents stopped Wedgeworth for a traffic violation and recovered 9.7 grams of methamphetamine (actual) during a search of his vehicle.  He was arrested and released on bond the following day.

21

On February 5, 2019, Orange County Sheriff's detectives observed Wedgeworth, who they knew to have an active Texas parole violation warrant, commit a traffic violation in a vehicle he was driving in Vidor.  As the detectives attempted to execute a traffic stop, Wedgeworth turned left into a residential road and accelerated the vehicle's speed while fleeing from detectives.  As he attempted to turn left on to another road, he lost control of his vehicle, which left the roadway and entered a ditch.  Upon exiting the vehicle, Wedgeworth was placed under arrest.  During a search of his vehicle, law enforcement recovered a plastic grocery bag which held several small baggies containing methamphetamine.  Law enforcement also seized a plastic bag containing an unknown quantity of marijuana.  When questioned about the methamphetamine, he indicated that it was 6 ounces (170.097 grams) of methamphetamine.  Hence, during the course of the conspiracy, Wedgewood knowingly and intentionally conspired and agreed with others to distribute and to possess with the intent to distribute 228.25 grams of methamphetamine (actual) and recklessly created a substantial risk of death or serious bodily injury to another person when he lost control of his vehicle in a residential neighborhood as he fled from law enforcement.

In addition to the nature and circumstances of his offense of conviction, Wedgeworth has an extensive criminal history beginning at age 13, which includes prior convictions for harassment, burglary of a vehicle (2x), burglary of a building, possession of a controlled substance (carisprodol), evading detention, possession of a controlled substance (alprazolam, hydrocodone, and carisprodol), possession of a dangerous drug, possession of marijuana (2x), possession of a controlled substance (cocaine), tampering with governmental record, possession of a controlled substance (methamphetamine) (5x), and evading arrest/detention with a motor vehicle (2x).  His terms of probation have been repeatedly revoked.  He was released on parole at the time he

22

committed his offense of conviction. All told, Wedgeworth accumulated 24 criminal history points, which far exceeds the 13 points necessary to be classified in the highest criminal history category of VI. In addition, he has a long history of substance abuse, which includes the frequent use of marijuana and methamphetamine. Wedgeworth's Presentence Investigation Report ("PSR") reveals that his sentencing guidelines range was 188 to 235 months' imprisonment, but he was sentenced to only 151 months of imprisonment pursuant to a binding plea agreement.

In support of his motion, Wedgeworth asserts that, in addition to his working as an orderly and participating in prison programs, his age indicates that he poses a low risk for recidivism. Courts have long recognized, however, that drug dealing constitutes a danger and threat to the community. *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *accord United States v. Grimaldo*, No. 4:08-CR-107-SDJ, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9, 2022) (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No. 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The

harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'")).  Wedgeworth is only 38 years old and, according to prison records, he is in good health.  It is not apparent to the court that Wedgeworth's age alone would deter him from re-engaging in criminal conduct.  Moreover, Wedgeworth's involvement of others in his drug-related activities and his history of other crimes make him a significant danger to the community.

In addition, granting Wedgeworth a sentence reduction or compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitute[d] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.* at 694; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022). Here, Wedgeworth has served only three years of his 151-month sentence of imprisonment, or about 25%.  Releasing him now or reducing his sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and

adequate deterrence to criminal conduct. Wedgeworth has a lengthy criminal history with poor adjustment under supervision, as he has repeatedly violated previous terms of probation and parole. He has returned to criminal conduct despite serving multiple prior sentences of imprisonment. He was even convicted of the possession of a controlled substance in a correctional facility while he was serving a state prison sentence in 2018. On balance, despite his efforts at rehabilitation, the court declines to exercise its discretionary authority under § 3582 to reduce Wedgeworth's sentence in view of the reasons discussed above and the applicable factors set forth in § 3553(a). Requiring Wedgeworth to serve the entire sentence imposed serves as just punishment, promotes respect for the law, and deters future violations of the law.

III.    Conclusion

In sum, Wedgeworth has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Wedgeworth's track record is similarly a poor one. There is no reason to believe that he would not revert to his prior drug-dealing and drug-abusing behavior as well as engaging in other criminal activity if his sentence is reduced or he is released from prison at this juncture. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021). The 151-month sentence of imprisonment imposed upon Wedgeworth for his engaging in a conspiracy to distribute and to possess with intent to distribute in excess of 220 grams of "actual" methamphetamine comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no

extraordinary and compelling reasons to lessen his sentence or release him from prison at this time. Neither Wedgeworth's misunderstanding of federal sentencing laws and guidelines, his failure to obtain credit on his federal sentence for time spent in state prison upon the revocation of his parole, the adverse effects of COVID-19 upon the service of his sentence, nor his efforts at rehabilitation merit a reduction of sentence under these circumstances.

Accordingly, Wedgeworth's Motion for Sentence Reduction under the First Step Act and pursuant to 18 U.S.C. § 3582(c)(1)(A) (#464) is DENIED.

SIGNED at Beaumont, Texas, this 4th day of December, 2024.

_Marcia A. Crone_

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE